SCANNED at WVCF and Emailed on

_3-18-2020_ by _SV_ - _13_ pages.
(date)        (initials)   (num)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

RYAN PATRICK RUCKER
*Plaintiff*

vs.

WEXFORD MED. SERVICES, et al.,
*Defendants*

No. 2:19-cv-00569-JPH-MJD

**FILED**
**3:54 pm, Mar 19, 2020**
**U.S. DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**Laura A. Briggs, Clerk**

<u>**PLAINTIFF'S REPLY TO ANSWER FOR JURY DEMAND**</u>
<u>**AND AFFIRMATIVE DEFENSES**</u>

Plaintiff, Ryan Patrick Rucker, *pro se*, respectfully issues his Reply to the

Defendants' Answer for Jury Trial and asserted Affirmative Defenses by stating as

follows:

1.  <u>Admissions</u>:   Rucker acknowledges and accepts the defendants' proffered

admissions in rhetorical paragraphs 1-8[1] and the inability to admit in 16 of their Answer

to his amended complaint.

<u>Denials</u>:   Rucker disagrees and opposes the Defendants' asserted denials in

rhetorical paragraphs 9-15 and the possible denial in 16 of their Answer to his amended

complaint.

2.  <u>Affirmative Defenses</u>:   Rucker acknowledges the Defendants' asserted

defenses and issues his points of opposition as follows:

---

[1] With regard to paragraph 7 which concerns Defendant Boyd, Rucker will note that it is
irrelevant whether Nurse Boyd is currently employed with WEXFORD of Indiana, LLC.  During
all times relevant to Rucker's claims, Nurse Boyd was in WEXFORD's employ and acted under
the color of State law, and in accordance with WEXFORD policy and custom.

**a.** <u>Cause of Injury:</u>  the Defendants' contend that the Plaintiff's injuries were caused by his own conduct and his alleged "failure to mitigate damages by exercising ordinary care."  Answer p. 3, ¶ 3.  To be sure, Rucker advises while his foot was broke as a result of him slipping on his upper bunk's ladder [Dkt. 13 p. 6, ¶ 1], his actions in no way hindered or otherwise obstructed the Defendants from being to timely or adequately render medical care as required by Indiana State law [I.C. § 11-10-3-2(c)(2)] and the United States Constitution.  *See* Amend. VIII, U.S. Const.; *Bell v. Wolfish,* 441 U.S. 520 (1979); *Estelle v. Gamble,* 429 U.S. 97 (1976).

Furthermore, Rucker argues that none of his personal actions or conduct "in whole or in part" contributed to the facts which demonstrate that the Defendants:  (1) left him without emergency medical care on the night his foot was broken – where any reasonably minded medical professional could conclude the probability of broken bones; (2) left Rucker without proper or effective pain management that evening, and for three more days, to suffer needlessly; (3) delayed in scheduling necessary surgery for thirty-five days post-injury; (4) failed to provide Rucker with alternate means of transport around the facility upon the advisement that he had to "stay off his foot;"[2] and (5) failed to provide effective follow-up care after it was medically demonstrated that Rucker's post-operative conditions were affecting the process of normal body systems (i.e., Rucker's back, hip and

---

[2] In furtherance of this point Rucker will note that while Defendant Wright told Rucker to stay off his foot, no medical "lay-in" order was issued, nor was Rucker provided a wheelchair, in order to make his facility count letters, consistent with Wright's instruction.

movement). *See* Dkt. 13 pp. 7, ¶¶ 5-12; 8, ¶¶ 15-20; 9, ¶ 28; 10, ¶ 30; 11, ¶¶ 35-36; 16, ¶¶ 56-59; and 17-18, ¶¶ 64-67.

In cases like the present, the Eighth Amendment, applicable to the States through the Due Process Clause of the Fourteenth Amendment, protects prisoners, like Rucker, from prison conditions that cause "the wanton and unnecessary infliction of pain," *Rhodes v. Chapman,* 452 U.S. 337, 347-49 (1981) which includes grossly inadequate medical care. *Estelle,* 429 U.S. at 103-04. Here, Rucker broke three bones in his left foot. The Defendants do not dispute that this condition, or any of the other subsequent conditions caused by the post-operative conditions of Rucker's foot, are "objectively serious." *Arnett v. Webster,* 658 F.3d 742, 750 (7th Cir. 2011); *Knight v. Wiseman,* 590 F.3d 458, 463 (7th Cir. 2009). Nor do the Defendants deny having knowledge of Rucker's conditions, the risks they posed or currently pose, or the subsequent consequences Rucker has suffered from their disregard of those risks. *Arnett,* 658 F.3d at 751. Therefore, for the Defendants to say that Rucker's actions or conduct in some way inhibited them from doing their job in treating him or that he somehow made his conditions worse while pleading incessantly for treatment is not only morally indefensible it is constitutionally offensive. Especially, since Rucker has demonstrated that the lack of emergent care, delay in surgery, and ineffective or indifferent aftercare treatments he experienced were "blatantly inappropriate" despite clear indications of the aforementioned substantial health risks. *See Greeno v. Daley,* 414 F.3d 645, 654 (7th Cir. 2005).

More than that, Rucker's amplified claims have also sufficiently alleged that the defendants' acts or omissions were directly caused by the policies and customs of their

employer, WEXFORD, which was and continues to be the "moving force" behind Rucker's constitutional injuries. *See Minix v. Canarecci,* 597 F.3d 824, 832 (7th Cir. 2010).[3] The instant facts establish that the Defendants knew or should have known that Rucker's conditions posed substantial risks of serious harm, but disregarded those risks where they failed to take appropriate and reasonable (i.e., timely) measures to abate them. *See e.g., Estelle,* 429 U.S. at 104-05; *Gayton v. McCoy,* 593 F.3d 610, 619 (7th Cir. 2010); *Edwards v. Snyder,* 478 F.3d 827, 832 (7th Cir. 2007).

Rucker maintains that he provided the Defendants every reasonable opportunity to perform their constitutionally imposed duty. Therefore, Rucker contends that he cannot be blamed for the Defendants' inability to do what any reasonably minded medical profession would have deemed prudent, right and appropriate.

**b.** Qualified Immunity: applies to official functions, specifically "executive functions" like those commonly performed by prison personnel. *See Buckley v. Fitzsimmons,* 509 U.S. 259, 273 (1993). Accordingly, for a prison official to enjoy the protection of qualified immunity from damage liability in a federal civil suit, that person must have fair notice of the law *before* being subject to a damages suit for violating it. *Hope v. Pelzer,* 536 U.S. 730, 739-40 (2002) (emphasis added). This means that the defendants would have to know about the legal ramifications of their actions as those actions pertain to their job, but ignored them and acted unlawfully anyway.

---

[3] Plaintiff will note that Defendant, Dr. Kleinman is not an employee of WEXFORD, LLC, nor is he directly contracted with the Indiana Dep't. of Correction. Therefore, a separate Reply will have to be issued when Kleinman or authorized counsel file an answer to Rucker's complaint.

However, the Defendants in this action are not entitled to qualified immunity because, although, they work at Wabash Valley Corr. Facility, as operated by the Ind. Dep't. of Corr., they are "employed" by WEXFORD of Indiana, LLC which is a "private" corporation. *See* Dkt. 17 p. 1; Answer p. 2, ¶ 8.  As private employees of an outside, contracted corporation the Defendants do not align to the purposes of the immunity doctrine even as "private employees exercising government functions."  *See e.g., Richardson v. McKnight,* 521 U.S. 399, 406-12 (1997).  Furthermore, employees of private prisons, or any other private parties who act under color of State law, are not protected by qualified immunity even though they may possess a "good faith" defense. *Wyatt v. Cole,* 504 U.S. 158, 167-68 (1992).  Moreover, this defense would not be available for WEXFORD of Indiana itself, since corporations – in the context of civil suits like those under Section 1983 - are treated like city or county governments which are not entitled to qualified immunity.  *Owens v. City of Independence,* 445 U.S. 622 (1980).

**c.** <u>Failure to Exhaust Administrative Remedies:</u>  Rucker acknowledges that this defense must be resolved before reaching the merits of this case.  *See Pavey v. Conley,* 544 F.3d 739, 742 (7th Cir. 2008).  To that end, the Defendants have filed, by their Answer, what appears to be a dispositive motion based, in part, on this defense.  Therefore, Rucker posits that the Defendants must be advised that it will be their burden to prove both that (1) an administrative remedy process was available for Rucker to address his issues; and (2) that he failed to utilize it.  *Thomas v. Reese,* 787 F.3d 845, 848 (7th Cir. 2015).  The Defendants will not succeed in this defense.

Rucker will stipulate that there is an available administrative remedy through the Ind. Dep't. of Corr.'s grievance policy and procedures.  Further, Rucker advises that he has utilized said remedy on several occasions, in the context of the proceedings leading up to the instant action. *See* Dkt. 7 exhibits 4-6.  Those actions proved unfruitful and have been exhausted or otherwise deemed unavailable due to timeliness concerns.  Nevertheless, it is Rucker's intent to provide those records to this Court and to all parties.[4]

Under the Prison Litigation Reform Act, a prisoner must exhaust any "available" administrative remedies before seeking to file a civil suit under 42 U.S.C. § 1983.  *See* 42 U.S.C. § 1997e(a);  *e.g., Porter v. Nussel,* 534 U.S. 516, 524 (2002).  Here, Rucker will demonstrate that he utilized the IDOC's grievance process, where available, which resulted in an adverse ruling.  Thus, all claims put forth in the instant action [Dkt. 13] were put forth on appeal to a final review authority which concluded the remedy's process.  *Perez v. Wis. Dep't. of Corr.,* 182 F.3d 532, 534-35 (7th Cir. 1999).  As a result of these facts, the Defendants' asserted defenses lack muster and will not prevail.

**WHEREFORE,** Plaintiff prays this Court enter judgment in his favor and against the Defendants, plus cost of suit and any applicable fees and expenses to the extent allowed by law.

---

[4] Rucker will note that the Defendants have filed a contemporaneous request for the production of documents and a request for interrogatories with their Answer to Rucker's complaint. Rucker is in the process of complying with those requests and has until April 11th 2020 to do so. Again Rucker must acknowledge that Defendant, Dr. Kleinman, or counsel, has yet to enter an appearance for this action or issue a response to Rucker's complaint.  The deadline for which would be no later than April 13th 2020.

Respectfully submitted,

/s/ Ryan Patrick Rucker
**Ryan P. Rucker, Plaintiff,** *pro se*
**Wabash Valley Corr. Facility**
**6908 S. Old U.S. Hwy 41; P.O. Box 1111**
**Carlisle, Indiana 47838**

## CERTIFICATE OF SERVICE

I CERTIFY, that I have electronically filed this document to the Court for electronic distribution to *all parties*; by placing the foregoing into the hands of a Wabash Valley Correctional Facility Librarian on **March 18, 2020**, for electronic delivery.

## VERIFICATION OF INSTRUMENT

I upon my oath, in the presence of God, do solemnly declare under penalty of perjury that the foregoing is true and correct,[5] to the best of my knowledge and belief. The foregoing instrument is hereby executed on **March 18, 2020**.

Ryan Patrick Rucker
W.V.C.F (G-112)
P.O. Box 1111
Carlisle, Indiana  47838

---

[5] 28 U.S.C. § 1746

7